UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>DARA PARVIN,<br><br>Debtor/Appellant. | C15-1648-TSZ<br><br>ORDER |

THIS MATTER comes before the Court on an appeal from a decision by the Honorable Christopher M. Alston of the Bankruptcy Court of the Western District of Washington to convert an individual debtor's Chapter 7 bankruptcy case to Chapter 11 under 11 U.S.C. § 706(b).  For the reasons below, the Court AFFIRMS the bankruptcy court's decision.

**Background**

The facts of this matter are not in dispute.[1]  Appellant, Dr. Dara Parvin, is an orthopedic surgeon now living in Dubuque, Iowa who filed for Chapter 7 bankruptcy in the Western District of Washington on April 29, 2015.  At the time of filing, appellant had $23,544 in secured debt and $1,094,648 in general unsecured debt, the latter of which was mostly composed of a loan from his parents and business debt related to his tenure at the Oregon Coast Spine Institute.  Appellant additionally listed an unknown amount

---

[1] For a full recitation of the facts, *see In re Parvin*, 538 B.R. 96 (Bankr. W.D. Wash. 2015).

ORDER - 1

owed for past and ongoing alimony and child support.  Shortly after appellant filed for bankruptcy, the United States Trustee filed a motion to convert this case to Chapter 11 on the basis that appellant had sufficient disposable income to repay his creditors through a Chapter 11 plan.[2]  Appellant opposed the conversion, arguing that it would subject him to involuntary servitude in violation of the Thirteenth Amendment and was improper under 11 U.S.C. § 706(b).  The bankruptcy determined appellant's constitutional challenge was not ripe and he lacked standing to make it and that the statutory challenge was without merit.  Appellant thereafter filed this timely appeal.

**Analysis**

**A.     Standard of Review**

When considering a bankruptcy appeal, a district court uses the same standard of review a circuit court would use in reviewing the decision of a district court.  *In re Kelly*, 499 B.R. 844, 852 (S.D. Cal. 2013) (citing *In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997)).  Thus, the Court reviews the bankruptcy court's factual determinations for clear error and its conclusions of law de novo.  *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010).  Whether the plaintiff had standing, whether his claim was ripe, and if so, whether conversion violates the Thirteenth Amendment, are legal conclusions subject to de novo review.  *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996).

---

[2] According to appellant's schedules, he would have $34,487 in surplus income every month and could repay all of his unsecured creditors in less than three years.  *See* docket no. 1 in Bankr. Case No. 15-12634-CMA at 27-29.

ORDER - 2

The parties dispute the appropriate standard of review of the bankruptcy court's decision to convert the case from Chapter 7 to Chapter 11. Section 706(b) provides that "the court may convert a case under this chapter [7] to a case under chapter 11 of this title at any time." The bankruptcy court has broad discretion in exercising this power based on a determination of what "will most inure to the benefit of all parties in interest." *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977)). Further, it is well-established that the decision to convert a case from Chapter 11 to Chapter 7 is subject to the abuse of discretion standard. *See, e.g.*, *id.* at 1161 ("[D]ecisions to convert are within the discretionary powers of the bankruptcy court."); *In re Mohsen*, 321 Fed. App'x 607, 608 (9th Cir. 2009); *In re Cons. Pioneer Mort. Entities*, 264 F.3d 803, 806-07 (9th Cir. 2001). Accordingly, the Court will review the decision to convert under § 706(b) under an abuse of discretion standard.

**B.    Section 706(b) Conversion**

Appellant argues that the bankruptcy court improperly converted his case from Chapter 7 to Chapter 11 pursuant to 11 U.S.C. § 706(b). That section provides that "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." The bankruptcy court concluded that conversion served the interest of all parties.

The bankruptcy court has broad discretion in exercising this power based on a determination of what "will most inure to the benefit of all parties in interest." *In re Texas Extrusion Corp.*, 844 F.2d at 1161 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977)). "Section 706(b) does not provide guidance regarding the factors a court

ORDER - 3

should consider.  Since there are no specific grounds for conversion, a court should consider anything relevant that would further the goals of the Bankruptcy Code." *In re Schlehuber*, 489 B.R. 570, 573 (B.A.P. 8th Cir. 2013).  However, courts have recognized that the debtor's ability to pay his creditors is typically the first consideration.  *In re Peterson*, 524 B.R. 808, 815 (Bankr. S.D. Ind. 2015).

The bankruptcy court concluded that appellant stood to earn enough salary from his employment agreement that he would be able to pay off all his creditors in full within three years.  In contrast, creditors would only receive at most 20% of their unsecured claims in a Chapter 7 proceeding.  In addition, the bankruptcy court noted that appellant would also benefit by being able to enter into a managed payment plan for certain domestic support obligations which are not dischargeable under Chapter 7.

The Court concludes that the bankruptcy court did not abuse its discretion by converting the case to Chapter 11.  Suggesting a seven-prong test of his own devising with no basis in the law, appellant argues that the bankruptcy court ignored the burden conversion would impose upon him.  However, any such burden here is light, and is no more than requiring appellant to repay valid debts from a salary so high that he would be able to repay the debts with his net disposable income.  Creditors stand to recover their whole debt under Chapter 11 as compared to approximately 20% under Chapter 7.  The bankruptcy court explicitly addressed the concerns appellant cites as burdens he would face under Chapter 11.  The bankruptcy court exercised its discretion and found that conversion "would further the goals of the Bankruptcy Code," *In re Schlehuber*, 489 B.R. at 573.  Because the bankruptcy court applied the correct standard, the Court concludes

ORDER - 4

that the bankruptcy court did not abuse its discretion in converting the case under § 706(b).

The cases appellant cites are distinguishable.  For example, the bankruptcy court in *In re Karlinger-Smith*, in exercising its discretion, determined there was *no* benefit to the debtor as a result of conversion and declined to do so.  544 B.R. 126, 133-34 (Bankr. W.D. Tex. 2016).  That court also stressed "the Debtors' lengthy, diligent, and for the most part successful efforts to satisfy their debts before bankruptcy" as a reason for its decision.  *Id.* at 134.  The bankruptcy court here determined that conversion provided some benefit to appellant by allowing restructuring of certain non-dischargeable obligations.  *See id.* at 134 (requiring "some benefit to Debtors, however small or intangible").  Appellant's reliance on *In re Graham* is similarly misplaced.  That court reached the conclusion, before BAPCA, that where the interests of the debtor and creditors conflict, conversion under § 706(b) is impermissible.  *In re Graham*, 21 B.R. 235, 238-39 (Bankr. N.D. Iowa 1982) ("Thus, the expressed legislative intent is that individual debtors should not be forced into a repayment plan against their will.  Some members of Congress appear to be rethinking this policy, but the Court must follow legislative intent as it is presently expressed.").  BAPCPA has now unequivocally included post-petition earnings of individual debtors in property of the chapter 11 estate, even though chapter 11 may be involuntary.  *In re Karlinger-Smith*, 544 B.R. at 132.

C.   **Thirteenth Amendment Challenge**

Appellant's main argument is that the bankruptcy court's decision to forcibly convert his Chapter 7 case to Chapter 11 violates the Thirteenth Amendment's

ORDER - 5

prohibition of involuntary servitude.  That amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

Appellant's argument is based on congressional concerns over the Thirteenth Amendment in the context of Chapter 13 bankruptcy.  When debating the Bankruptcy Reform Act of 1978, the House Report notes that "[t]hough it has never been tested in the wage earner plan context, it has been suggested that a mandatory chapter 13, by forcing an individual to work for creditors, would violate this prohibition."  H.R. Rep. 595, 95th Cong., 1st Sess. 120 (1977).  Accordingly, Chapter 13 included a debtor's post-petition wages and income but, as a result, was completely voluntary.  *See* 11 U.S.C. § 1306(a).  The Supreme Court similarly noted, though did not rule on, the same issue.  *See Toibb v. Radloff*, 501 U.S. 157, 166 (1991) ("Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization.").

Until Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), post-petition wages and income were not included in a Chapter 11 estate, in contrast to Chapter 13.  *See In re Karlovich*, 567 B.R. 677, 681 (S.D. Cal. 2010).  However, BAPCPA significantly altered the 1978 Code, with "Congress intend[ing] to make Chapter 11 operate for individual debtors similarly to Chapter 13."  *In re Maharaj*, 681 F.3d 558, 564 (4th Cir. 2012).  Simply put, appellant

ORDER - 6

argues that § 706(b) is unconstitutional because it now permits the forcible inclusion of post-petition wages and income as part of a debtor's estate, implicating the concerns that drove Congress to make Chapter 13 purely voluntary.

The bankruptcy court determined that this challenge was not ripe and that appellant lacked standing to make it, as conversion on its own did not force him to pay creditors out of post-petition income.

1.   **Standing**

Standing is a threshold question in every case in federal court, containing both a constitutional and prudential component.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  In order to satisfy the constitutional requirement, plaintiff "must show that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)) (internal quotations omitted).

The bankruptcy court determined appellant lacked standing because the mere conversion of his case did not constitute an injury in fact.  The Court agrees.  Conversion of a Chapter 7 case to Chapter 11 does not impose involuntary servitude on a debtor without further action of the bankruptcy court.  There are a number of critical steps that must take place before appellant could be forced to pay creditors from post-petition income.  For example, appellant has an exclusive 120-day period to propose a repayment

ORDER - 7

plan, which may be extended by eighteen months.  *See* 11 U.S.C. § 1121.  Only after the expiration of that period could the bankruptcy court adopt a plan proposed by creditors requiring repayment from post-petition income.  Reaching this ultimate conclusion is highly "conjectural or hypothetical," such that appellant has not alleged an injury in fact. *See Northwest Airlines v. FAA*, 795 F.2d 195, 201 (D.C. Cir. 1986) ("The injury requirement will not be satisfied simply because a chain of events can be hypothesized in which the action challenged eventually leads to actual injury.").

Appellant contends that conversion does cause an injury in fact by including post-petition income within the assets of the estate.  However, there is no risk of involuntary servitude until the bankruptcy court accepts a creditors' plan which calls for repayment from post-petition income.  In *In re Gordon*, a bankruptcy court faced this issue and reached the conclusion that "the Debtor has not suffered an actual injury, nor is injury imminent based merely on a conversion of the case to Chapter 11." 465 B.R. 683, 699 (Bankr. N.D. Ga. 2012).  The only possible injury that appellant may have suffered from conversion is his inability to obtain discharge specifically under Chapter 7, but because there is no constitutional right to a discharge, *United States v. Kras*, 409 U.S. 434, 444-45 (1973), he has not suffered a cognizable injury and thus lacks standing.

    **2.**    **Ripeness**

"Ripeness has two components: constitutional and prudential ripeness." *In re Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009).  Constitutional ripeness overlaps with Article III standing's "injury in fact analysis," and "the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract."

*Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (internal quotations omitted). Prudential ripeness weighs two considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1060 (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Appellant's Thirteenth Amendment challenge fails to meet either component of ripeness.

This challenge is entirely "hypothetical or abstract." "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Lyon v. Gila River Indian Cmty*, 626 F.3d 1059, 1079 (9th Cir. 2010). There are a number of critical steps before appellant could be forced to work to pay his creditors. Whether this situation comes to pass is purely conjectural and subject to the bankruptcy court taking multiple actions over a period of, at a minimum, four months. *See* 11 U.S.C. § 1121 (providing an exclusive 120-day window for the debtor to propose a repayment plan).

A bankruptcy court facing an identical issue reached the conclusion that a Thirteenth Amendment challenge to a conversion under § 706(b) was not ripe. In *In re Gordon*, after recounting the debtor's claimed injuries, the court dismissed such a challenge based solely on conversion, observing that "[n]one of the foregoing 'horribles' have occurred, and none will occur without other decision by the Court." 465 B.R. at 698. The bankruptcy court has not taken any action other than converting the case. Just as plaintiff lacks standing to bring a Thirteenth Amendment challenge, any such

ORDER - 9

challenge is not ripe. *See Wolfson*, 616 F.3d at 1058 ("The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing.").[3]

**Conclusion**

For the foregoing reasons, the Order, converting this Chapter 7 case to a Chapter 11 proceeding, docket no. 28, in Case No. 15-12634-CMA (Bankr. W.D. Wash. Sept. 2015), is AFFIRMED. The Clerk is directed to send a copy of this Order to all counsel of record and to Bankruptcy Judge Christopher M. Alston.

IT IS SO ORDERED.

Dated this 22nd day of March, 2016.

_____
Thomas S. Zilly
United States District Judge

---

[3] As the bankruptcy court did not address the merits of the Thirteenth Amendment challenge, the Court does not make a determination on that issue. However, the Court expresses its considerable doubt as to the argument's merit given the scope of the Thirteenth Amendment's protection. *See generally In re Gordon*, 465 B.R. at 696-67 (discussing the genesis and purpose of the Thirteenth Amendment). In addition, because the debtor has the right to work or not to work there may never be a Thirteenth Amendment issue. The bankruptcy court's order clearly reflects that if appellant chooses not to proceed under Chapter 11 and pay his debts under such a plan, the court will simply dismiss his case. Docket no. 29 at 8-9. Thus, mere conversion to Chapter 11 will not result in involuntary servitude. Appellant has a choice: he may comply with any reorganization plan should one be confirmed and obtain a discharge or he may ignore it and not receive a discharge. *See Brooks v. George Cnty.*, 84 F.3d 157, 162 (5th Cir. 1996) ("When the [individual] has a choice, even though it is a painful one, there is no involuntary servitude.") (internal quotations omitted); *Brogan v. San Mateo Cnty.*, 901 F.2d 762, 764 (9th Cir. 1990) (rejecting Thirteenth Amendment challenge where plaintiff had no obligation to participate in a work program).